IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ACUMED LLC,                                    06-CV-642-BR

       Plaintiff,                         OPINION AND ORDER

v.

STRYKER CORPORATION,
STRYKER SALES CORPORATION,
STRYKER ORTHOPAEDICS, and
HOWMEDICA OSTEONICS CORPORATION,

       Defendants.


**JAMES R. ABNEY**
**PETER E. HEUSER**
Kolisch Hartwell, PC
200 Pacific Building
520 S.W. Yamhill Street
Portland, OR 97204
(503) 224-6655

**PAUL K. VICKREY**
**RICHARD B. MEAGLEY, JR.**
Niro, Scavone, Haller & Niro
181 W. Madison
Suite 4600
Chicago, IL 60602-4515
(312) 236-0733

     Attorneys for Plaintiff

1 - OPINION AND ORDER

**GREGORY J. VOGLER**
**SHARON A. HWANG**
McAndrews, Held & Malloy
500 W. Madison
34th Floor
Chicago, IL 60661
(312) 775-8000

**JOHN F. NEUPERT**
Miller Nash LLP
111 S.W. Fifth Avenue
Suite 3400
Portland, OR 97204
(503) 224-5858

    Attorneys for Defendants


**BROWN, Judge.**

  This matter comes before the Court on Defendants' Motion to Dismiss (#6) for *res judicata*.  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


<u>**BACKGROUND**</u>

  The facts necessary to resolve Defendants' Motion are undisputed.

  In 2004 Plaintiff brought an action in this Court against Stryker Corporation, Stryker Sales Corporation, Stryker Orthopaedics, and Howmedica Osteonics Corporation.  *See Acumed v. Stryker*, 04-CV-0513-BR (*Acumed I*).  In that action, Plaintiff alleged Defendants had infringed Plaintiff's United States Patent No. 5,472,444 ('444 Patent) on a proximal humeral nail used to treat certain bone fractures.  Plaintiff markets and sells their

2 - OPINION AND ORDER

proximal humeral nails under the name Polaris.  Plaintiff alleged Defendants infringed Plaintiff's '444 Patent by manufacturing and selling the T2 Proximal Humeral Nail (T2 PHN).

During the course of discovery in *Acumed I*, Plaintiff discovered Defendants had developed another, longer version of the T2 PHN named the T2 Long.  Before discovery closed on December 17, 2004, Defendants produced manufacturing drawings, development documents, and other pertinent information about the T2 Long.

In April 2005, Defendants began publicly marketing and selling the T2 Long in the United States.  Apparently unaware that Defendants already were selling the T2 Long, Plaintiff asked Defendants on July 28, 2005, whether they were going to market and sell it in the United States.  Defendants did not immediately respond.  On August 16, 2005, Defendants' attorney advised Plaintiff that Defendants did not believe the issues in *Acumed I* extended to the T2 Long and, consequently, Defendants declined to respond substantively to Plaintiff's inquiry.

On August 18, 2005, in the midst of filing its pretrial documents, Plaintiff filed a Motion to Compel production of a physical sample of the T2 Long and disclosure of all relevant sales data pertaining to the T2 Long.  Defendants objected to the discovery motion on the basis that it was filed after the deadline the Court had set for such motions and was, in fact,

interfering with Defendants' trial preparation.  Nonetheless,
Defendants provided Plaintiff with a sample of the T2 Long.
After inspecting it, Plaintiff argued the T2 Long was
substantially similar to the T2 PHN and, therefore, also might
infringe the '444 Patent.

Before *Acumed I* went to trial on September 13, 2005, the
Court offered to allow Plaintiff to litigate any potential T2
Long patent-infringement claims[1] in *Acumed I*.  In a telephone
conference held August 19, 2005, however, the Court noted a
necessary consequence of including the T2 Long in *Acumed I* would
be a significant delay (perhaps as much as one year) in the
existing trial date.  The Court stated:

> I'm quite concerned that the only fair consequence
> here is to halt the presses and to evaluate what to
> do to bring the parties in a fair position to
> resolve everything in one case, because I certainly
> know you don't want to do two trials over
> substantially similar issues. . . .
>
> I'm very much inclined . . . [to halt the presses
> in terms of the pending trial date].  I don't think
> . . . [Plaintiff has] a choice in terms of fairness
> in going forward with both items on the existing
> trial date, and I guess what . . . [counsel for
> Plaintiff needs] to include in [their] presentation
> this afternoon is a decision.  If [Plaintiff]
> really want[s] to go forward [with discovery], it's
> going to carry the consequence of delay.

The Court also noted Plaintiff should be aware that "there may be

---

[1] Although the term "claim" enjoys a unique meaning in
patent law, the Court uses "claim" to mean "claim for relief" in
this Opinion and Order unless otherwise indicated.

some kind of foreclosure to the Plaintiff for not including the [T2 Long] claim in this matter and some later consequence of being precluded from including it."  The Court, however, did not make any ruling as to the possibility of a later preclusive effect.

On August 22, 2005, the Court held a Pretrial Conference. At that time, Plaintiff's attorney told the Court that Plaintiff was not going to pursue claims of infringement as to the T2 Long in *Acumed I* because it wanted to keep the existing trial date:

> I was able to speak to my client on this issue. He does not want to jeopardize the September 13th trial date, so . . . we would withdraw our motion to compel.  We feel that the [T2 Long] is not part of the case, [and] would be a separate issue decided by a separate case down the path.

The *Acumed I* jury trial began on September 13, 2005.  During the course of the trial, Plaintiff introduced into evidence documents pertaining to the T2 Long to show that Defendants had willfully infringed the '444 Patent with respect to the T2 PHN.

On September 20, 2005, the jury returned its Verdict in which it found, among other things, that Defendants willfully infringed the '444 Patent with the T2 PHN.  The Court entered a final Judgment on April 21, 2006.

On May 3, 2006, Plaintiff filed a Complaint initiating this action (*Acumed II*) in which Plaintiff alleges the T2 Long infringes the '444 Patent.  On July 17, 2006, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil

5 - OPINION AND ORDER

Procedure 12(b)(6) on the ground that Plaintiff is barred by *res judicata* from bringing this action because Plaintiff failed to litigate its claim as to the T2 Long in *Acumed I*.

**STANDARDS**

**1.    Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

Under Rule 12(b)(6), dismissal is only proper if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  The court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

In this case, both parties agreed at oral argument that the Court may take judicial notice of the proceedings in *Acumed I* and may consider documents admitted during *Acumed I* when ruling on Defendants' Motion to Dismiss.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998)("A district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions.")(internal citations omitted).

6 - OPINION AND ORDER

2.    *Res Judicata.*

"Res judicata*, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001). Claim preclusion has the effect of "foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003)(citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1 (1984)).   The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties." *Owens,* 244 F.3d at 713.

## DISCUSSION

1.    **Ninth Circuit versus Federal Circuit Law.**

Because this is a patent case, Federal Circuit law must be examined to determine whether Ninth Circuit or Federal Circuit precedent controls the claim-preclusion analysis at issue.

The Federal Circuit has held when a "case turns on general principles of [*res judicata,* also known as] claim preclusion, not on any rule of law having special application to patent cases, we apply the law of the regional circuit in which the district court

7 - OPINION AND ORDER

sits." *Media Tech. Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003).  The Federal Circuit and the Ninth Circuit often apply identical *res judicata* principles.  *Compare Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1230 (Fed. Cir. 2006)("[T]he defense of [*res judicata* or] claim preclusion will generally be available [when] . . . the asserted claim was, or could have been, raised in a prior action between the parties which has been adjudicated on the merits.") with *Owens,* 244 F.3d at 713 ("Res judicata . . . bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.").  Nevertheless, certain cases raise *res judicata* issues unique to patent law and require an analysis under Federal Circuit law.  *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1556 (Fed. Cir. 1996).  Plaintiff relies on *Foster v. Hallco Manufacturing Company, Inc.*, 947 F.2d 469 (Fed. Cir. 1991), to support its argument that the application of *res judicata* in this case turns on an issue unique to patent law, and, therefore, Federal Circuit law applies to Defendants' Motion.

In *Foster*, the parties resolved a patent infringement claim with a consent judgment in which they agreed Hallco's patents on certain reciprocating floor-conveyor systems were valid in all respects and had been infringed by Foster.  *Id.* at 472.  Four years later, Foster began producing and marketing new models of

floor-conveyor equipment.  Foster filed an action seeking a
declaratory judgment that the Hallco patents, identified in the
consent judgment to be valid and enforceable in all respects as
to Foster's earlier conveyor models, were actually invalid and
unenforceable as to Foster's new conveyor models.  *Id.* at 472-73.
The district court held *res judicata* did not bar the second
action.  *Id.*

        On appeal to the Federal Circuit, Foster argued the second
action was not precluded by *res judicata* because the second
action involved "materially different allegedly infringing
devices" than those at issue in the first action.  Hallco,
conversely, argued claim preclusion barred the second action
because both actions raised the issue of the validity of the same
patent, and the consent judgment had resolved that issue on the
merits.  *Id.* at 478.  The Federal Circuit held *res judicata* only
barred the second action if Hallco's infringement claim rested on
the same transactional facts as in the earlier case.  *Id.* at 479.
"With respect to patent litigation, we are unpersuaded that an
infringement claim, for purposes of claim preclusion, embraces
more than the specific devices before the court in the first
suit. . . .  It follows that for claim preclusion to apply here,
the devices in the two suits must be essentially the same."  *Id.*
at 479-80 (internal citations omitted).  Thus, the court remanded
the case to the district court for a determination as to whether

the two devices were essentially the same.  If the district court found they were, *res judicata* would bar the second action because the two causes of action would have shared an identity of claims. *Id.* at 1295-96.

Here Plaintiff argues *Foster* requires Defendants to establish the T2 PHN at issue in *Acumed I* and the T2 Long at issue in *Acumed II* are essentially the same in order for *res judicata* to bar this action.  According to Plaintiff, the essential fact of a patent-infringement claim is the structure of the particular patented device at issue.  In short, Plaintiff maintains the issue before this Court is unique to patent law and, therefore, controlled by *Foster*.

Moreover, Plaintiff contends Federal Circuit law under the *Foster* court's reasoning locks Defendants into a factual scenario from which the application of *res judicata* is unreachable:  If Defendants establish the T2 PHN and the T2 Long are essentially the same, this action is unnecessary because the appropriate procedure would be for Plaintiff to pursue a contempt proceeding under the Judgment in *Acumed I*.  If, however, Defendants fail to establish the T2 PHN and the T2 Long are essentially the same, *res judicata* does not apply and Plaintiff's infringement claim as to the T2 Long withstands Defendants' Motion to Dismiss.

The Court, however, finds Plaintiff's reliance on *Foster* is misplaced.  As an initial matter, the *Foster* court found the

10 - OPINION AND ORDER

application of *res judicata* in that case would be the same under either Federal Circuit or Ninth Circuit law.  "[The parties] discern no significant difference between the Ninth Circuit and Federal Circuit in the understanding of [res judicata] principles or their application. . . .  Thus, we rely on the principles set out in the Restatement and freely refer to precedent on issue and claim preclusion from both circuits."  *Id.* at 477 n.7.  There is not any basis for this Court to disagree.

In addition, in *Hallco Manufacturing Company, Inc. v. Foster*, 256 F.3d 1290 (Fed. Cir. 2001), an action brought a few years later between the same parties, the Federal Circuit clarified the scope of *Foster*.  The *Hallco* court found *Foster* addressed a unique issue:  the applicability of *res judicata* on the validity of a patent as to later potentially infringing devices that were not and could not have been included in an earlier adjudication of the patent's validity that involved the same parties.  The issue whether *res judicata* applied to the second *Foster* action, therefore, only could be resolved by determining whether the floor-conveyor models in the second action were essentially the same as the models "admitted to infringe" Hallco's patents in the first action.  *Id.* at 1295.

Here, however, the circumstances are different:  Plaintiff knew about the T2 Long and chose not to litigate its potential infringement of the '444 Patent in *Acumed I* even though the Court

offered Plaintiff the opportunity to do so before trial commenced.  In contrast to the floor-conveyor models at issue in *Foster*, the T2 Long was manufactured and marketed before the final adjudication in *Acumed I*.  *Foster*, as a result, does not compel Defendants in this case to establish that the T2 PHN and the T2 Long are essentially the same in order to raise a *res judicata* defense.  Defendants only need to show that the T2 Long infringement claim could have been raised in the prior action. *See Pactiv Corp.*, 449 F.3d at 1230.  *See also Owens,* 244 F.3d at 713.  Accordingly, the Court concludes this case does not raise an issue unique to patent law, and, therefore, Ninth Circuit law applies.

Plaintiff also argues judicial estoppel bars Defendants from raising a *res judicata* defense.  This is a logical extension of Plaintiff's argument that, pursuant to *Foster*, Defendants bear the burden to establish that the T2 PHN and the T2 Long are essentially the same.  According to Plaintiff, however, Defendants are judicially estopped from asserting the T2 PHN and the T2 Long are essentially the same because Defendants repeatedly stated in *Acumed I* that the two devices are different. As noted, however, the Court disagrees with Plaintiff's application of *Foster* to this set of circumstances and concludes Defendants are not required to show the T2 PHN and the T2 Long are essentially the same in order for *res judicata* to apply.

Thus, the Court finds Plaintiff's judicial estoppel argument is misplaced.

**2.    Application of *Res Judicata*.**

Under Ninth Circuit law, the application of *res judicata* is relatively straightforward.  *Res judicata* is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity of parties or privity between parties." *Owens,* 244 F.3d at 713.  As the Ninth Circuit has observed, "the doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed." *Monterey Plaza Hotel Ltd. Partnership v. Local 483 of Hotel Employees*, 215 F.3d 923, 928 (9th Cir. 2000).  *See also Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995)(although the plaintiffs possessed evidence of conspiracy and extortion claims at the time of the first trial and did not present that evidence, "[i]t is clear that it could have done so because it had the evidence available to it prior to the state court's entry of final judgment.").

The Court resolved *Acumed I* on the merits and issued a final Judgment on April 21, 2006.  Thus, the only issue with respect to the three-part *res judicata* test is whether *Acumed I* and *Acumed II* share an identity of claims.

The Ninth Circuit has listed four criteria to determine

13 - OPINION AND ORDER

whether two proceedings share an identity of claims:  "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions."  *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

Although the second and third criteria weigh slightly in favor of Plaintiff, neither are particularly relevant here.  The right or interest that Plaintiff established in *Acumed I* was, in essence, the right to protect the '444 Patent from infringement. Prosecution of *Acumed II* would not destroy or impair that right.

The first and fourth criteria weigh most heavily here.  *See Owens*, 244 F.3d at 714 ("The central criterion in determining whether there is an identity of claims . . . is whether the two suits arise out of the same transactional nucleus of facts.") (internal citations omitted).  *See also Feminist Women's Health Ctr.*, 63 F.3d at 868 (court applied *res judicata* to bar a subsequent action in which the plaintiff "had to produce substantially the same evidence in both suits to sustain its case" and noted these two criteria in particular were "closely related and necessarily overlap[ped].").

In *Acumed I*, Plaintiff acknowledged its potential T2 Long

14 - OPINION AND ORDER

infringement claim and expressed its belief that the T2 Long was
substantially similar to the T2 PHN with respect to potential
infringement of the '444 Patent.  At the heart of Plaintiff's
infringement claims in both *Acumed I* and *Acumed II* is Plaintiff's
allegation that Defendant copied Plaintiff's Polaris nail.  Both
infringement claims, therefore, involve substantially the same
alleged violation of the '444 Patent.  Thus, trial of Plaintiff's
potential T2 Long infringement claim would require substantially
the same evidence that was presented in *Acumed I*.  As noted,
Plaintiff even offered documents pertaining to the T2 Long in the
*Acumed I* trial for the purpose of showing that Defendants
willfully infringed the '444 Patent by manufacturing and selling
the T2 PHN.  Although the T2 PHN and T2 Long may not be identical
devices and a trial as to the alleged T2 Long patent infringement
may involve additional evidence not presented in *Acumed I*,
application of *res judicata* only requires that substantially the
same evidence be necessary in both actions.  *See Feminist Women's
Health Ctr.*, 63 F.3d at 868 (court applied *res judicata* to bar a
subsequent action in which the plaintiff "had to produce
substantially the same evidence in both suits to sustain its
case.").  *See also Forest Guardians v. Thomas*, 967 F. Supp. 1536,
1549 (D. Ariz. 1997)("Further, the test is not whether the cases
involve the presentation of *identical* evidence, but rather
whether the cases involve the presentation of *substantially the*

15 - OPINION AND ORDER

*same* evidence.")(emphasis in original).

Here Plaintiff's T2 PHN and T2 Long infringement claims
arise from the same transactional nucleus of facts and,
therefore, could have been tried together in *Acumed I* using
substantially the same evidence if Plaintiff had chosen to do so.
Thus, the Court concludes *Acumed I* and *Acumed II* share an
identity of claims, and, accordingly, *res judicata* applies.

The timing of the potential infringement by the T2 Long does
not alter the Court's conclusion even though Plaintiff filed its
Complaint in *Acumed I* on April 14, 2004, and Defendants did not
begin marketing or selling the T2 Long in the United States until
April 2005. 35 U.S.C. § 271, the statute governing patent
infringement, would not have applied to the T2 Long before April
2005 because patent infringement liability only attaches when a
party, without authority, makes, uses, or sells a patented
invention. *See Lang v. Pac. Marine and Supply Co., Ltd.*, 895
F.2d 761, 765 (Fed. Cir. 1990). As noted, however, Plaintiff
knew Defendants were marketing and selling the T2 Long in the
United States well before the final adjudication of *Acumed I*, and
the Court gave Plaintiff the opportunity to litigate the
potential infringement of the T2 Long in *Acumed I*. Even if the
Court had not provided Plaintiff with such an opportunity,
Plaintiff could have made a motion to the Court for leave to file
a supplemental pleading under Federal Rule of Civil Procedure

16 – OPINION AND ORDER

15(d) for the purpose of alleging transactions, occurrences, or events pertaining to the T2 Long that took place after the date of Plaintiff's original Complaint.  *See LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986)(the general purpose of Rule 15(d) is "to promote as complete an adjudication of the dispute between the parties as is possible.")(internal citation omitted).  *See also Keith v. Volpe*, 858 F.2d 467, 475 (9th Cir. 1988)(trial courts liberally construe Rule 15(d) and frequently grant leave to amend or to supplement a complaint absent a showing of prejudice to the defendant); *Micron Tech., Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552, 559 (D. Del. 2006)(court granted leave to amend and supplement under Rule 15(d) because there would be no undue delay or undue prejudice).

The Court notes some courts have recognized exceptions to the application of *res judicata* when formal barriers to litigation prevent a claim from being brought in an earlier case and interfere with a plaintiff's full and fair opportunity to bring that claim.  Plaintiff cites *Jumpsport v. Hedstrom Corp.*, No. C 04-0199 PJH, 2004 WL 2203556 (N.D. Cal. Sept. 2004), as an example.  The *Jumpsport* court held when a plaintiff faces formal barriers to litigation such as a court order barring the plaintiff from bringing a particular claim in the first action, it is unfair to preclude the plaintiff from filing a second

17 - OPINION AND ORDER

action to bring those formerly barred claims.  *Id.* at 2.
*Jumpsport*, however, is distinguishable.  Here the prospect of a
lengthy delay in the trial of *Acumed I* was not a "formal"
impediment that barred Plaintiff from litigating its contentions
about the T2 Long.

In summary, Plaintiff's *Acumed II* patent-infringement claim
satisfies all three *res judicata* elements.  In addition,
Plaintiff was presented with a full and fair opportunity to bring
its claim in *Acumed I* and chose not to do so for reasons
unrelated to any formal barrier to litigation.  The Court,
therefore, concludes Plaintiff's T2 Long infringement claim is
barred by *res judicata* and grants Defendants' Motion to Dismiss.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to
Dismiss (#6).

IT IS SO ORDERED.

DATED this 6th day of November, 2006.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


18 - OPINION AND ORDER